IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SANDRA R. QUINN | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | |
| TRADITIONS OF AMERICA, L.P., | : | |
| TIMOTHY R. MCCARTHY, and | : | |
| J.R. REILLY, | : | No. 10-2462 |
|     Defendants. | : | |

**MEMORANDUM**

Schiller, J.                                                                                                                     August 16, 2010

In this case, Plaintiff sues her former employers, alleging that they terminated her unlawfully and breached a contract with her. Currently before the Court is Defendants' motion to dismiss several counts of Plaintiff's case. For the reasons stated below, the Court will grant the motion in part and deny it in part.

**I.    BACKGROUND**

From 1996 to 2009, Sandra R. Quinn was employed by Defendant Traditions of America, L.P. ("TOA"), a developer and builder of residential communities for people aged 55 and over, owned by Defendants Timothy McCarthy and J.R. Reilly. (Compl. ¶ 1–2.) Quinn was initially hired as a salaried salesperson, but was promoted to the position of Executive Vice President of Sales and Marketing. (*Id.* ¶ 1.)

On February 6, 2008, McCarthy presented Quinn with a document, the header of which read "Sandy Quinn; Comp Plan 2008." (*Id.* ¶ 27; *Id.* Ex. A [Compensation Plan].) This document stated that Quinn was to be paid a salary of $300,000 in 2008 and was also to receive performance-based

commissions based on her sales of homes that year. (*Id.* ¶ 28.) Hand-written below the salary and commission information was the following:

> The above compensation plan takes affect [sic] 1-1-08. SQ will continue to receive residual profits earned from HGH and WG.[1] The compensation plan may [be] renegotiated by the parties in December 2008. TOA agrees to restructure SQ's comp plan by trading salary/commission monies for SQ receiving ownership interests in communities started subsequent to WG. TOA will share all financial info so all parties can negotiate a revised plan acceptable to the parties.

(Compensation Plan.) The document was signed by McCarthy. (*Id.*)

During their February 6, 2008 meeting, McCarthy verbally reiterated to Quinn the representations in the written compensation plan, emphasizing in particular that in December 2008, Quinn would have an ownership interest in the sales of TOA communities then under construction or built thereafter. (Compl. ¶ 31.)

As the national economy and the real estate market soured in 2008, so too did TOA's sales. (*Id.* ¶ 32.) Quinn maintains that her job performance did not decline, but that after TOA's business began to struggle, McCarthy and Reilly began to criticize her work unjustly. (*Id.* ¶ 35.) Specifically, McCarthy and Reilly met with Quinn on February 10, 2009 (the day after Quinn turned 68 years old) and presented her with a written review that was highly critical of her performance. (*Id.* ¶¶ 36–37.) The review accused Quinn of communicating ineffectively, alienating most of the TOA staff, being uncooperative with others at TOA, and failing to engage in quality marketing work. (*Id.* Ex. B [2009 Performance Review].) The performance review stated that Quinn's base salary for 2008 had been $140,000 and that she had been paid $160,000 in "bonus awards." (*Id.*) The performance review stated that her salary for 2009 would be $140,000. (*Id.*) Quinn did not receive any ownership

---

[1] "HGH" and "WG" appear to be references to specific TOA communities. (Pl.'s Resp. to Defs.' Mot. to Dismiss at 4 n.1.)

interest in any of the TOA properties. (*Id.* ¶ 39.) On February 27, 2009, seventeen days after receiving her performance review, Quinn was fired. (*Id.* ¶ 42.)

On April 22, 2009, Quinn filed a charge of age discrimination against TOA with the United States Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission. On May 21, 2009, Quinn filed the present lawsuit. Count I charges Defendants with breach of contract based on their alleged breach of the February 6, 2008 compensation plan. Count II charges Defendants with breach of the duty of good faith and fair dealing by virtue of their "fail[ure] to deal honestly and fairly with Ms. Quinn by not restructuring her compensation plan to provide her with an ownership interest in TOA and by not providing her with the financial information necessary for her to become an owner of TOA." (*Id.* ¶ 59.) Count III requests an accounting from Defendants. Count IV claims that Defendants were unjustly enriched at Quinn's expense. Count V charges TOA with violating the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 823(a)(1). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. Defendants now seek to dismiss all but the ADEA claim filed against them.

## II.   STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party. *See Bd. of Trs. of Bricklayers and Allied Craftsman Local 6 of N.J. Welfare Fund v. Wettlin Assocs.*, 237 F.3d 270, 272 (3d Cir. 2001). A court should accept the complaint's allegations as true, read those allegations in the light most favorable to the plaintiff, and determine whether a reasonable

3

reading indicates that relief may be warranted. *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A court need not credit "bald assertions" or "legal conclusions" when deciding a motion to dismiss. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

"Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. Although the federal rules impose no probability requirement at the pleading stage, a plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Simply reciting the elements will not suffice. *Id*. (concluding that pleading that offers labels and conclusions without further factual enhancement will not survive motion to dismiss); *see also Phillips*, 515 F.3d at 231.

The Third Circuit Court of Appeals has recently directed district courts to conduct a two-part analysis when faced with a 12(b)(6) motion. First, the legal elements and factual allegations of the claim should be separated, with the well-pleaded facts accepted as true but the legal conclusions disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Second, the court must then make a common sense determination of whether the facts alleged in the complaint are sufficient to show a plausible claim for relief. *Id*. at 211. If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged—but has failed

to show—that the pleader is entitled to relief. *Id*.

When faced with a motion to dismiss for failure to state a claim, courts may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004). A district court may also consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

## III. DISCUSSION

### A. Breach of Contract

For an agreement to be enforceable in Pennsylvania, Plaintiff must show that: (1) the parties have manifested an intention to be bound by the agreement's terms; (2) the terms of the agreement are sufficiently definite to be specifically enforced; and (3) consideration was present. *See Channel Home Ctrs. v. Grossman*, 795 F.2d 291, 298–99 (3d Cir. 1986). Defendants argue that Quinn's breach of contract claim fails because the alleged contract does not satisfy the second element. This is a question of law and therefore can be decided at the motion to dismiss stage. *See Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 585 (3d Cir. 2009).

"An enforceable contract requires, among other things, that the terms of the bargain be set forth with sufficient clarity." *Lackner v. Glosser*, 892 A.2d 21, 30–31 (Pa. Super. Ct. 2006) (citing *Biddle v. Johnsonbaugh*, 664 A.2d 159 (Pa. Super. Ct. 1995)). "An agreement is expressed with sufficient clarity 'if the parties intended to make a contract and there is a reasonably certain basis upon which a court can provide an appropriate remedy.'" *Helpin v. Trs. of the Univ. of*

5

*Pennsylvania*, 969 A.2d 601, 610–11 (Pa. Super. Ct. 2009) (quoting *Greene v. Oliver Realty, Inc.*, 526 A.2d 1192, 1194 (Pa. Super. Ct. 1987)). However, no enforceable contract exists where there is no agreement or even a discussion as to *any* of the essential terms of an alleged bargain. *Lackner*, 892 A.2d at 31 (citing *Lombardo v. Gasparini Excavating Co.*, 123 A.2d 663 (1956)).

Here, the 2008 compensation plan lacks sufficient specificity to be enforced. Even if the word "may" in the agreement were to be ignored, the agreement lacks any specificity as to how "salary/commission monies" were to be traded for "ownership interests" in TOA properties, or in what amount. The purported agreement includes many undetermined essential matters and provides the Court no foundation upon which to determine how it would be executed or what the terms of the deal would be. *Cf. Am. Eagle*, 584 F.3d at 585 (finding agreement sufficiently specific to be enforceable and noting that it "covered all the necessary bases—there are no undetermined matters"). Nor does Quinn point to any conduct between February 2008 and February 2009 that would give any structure to the otherwise completely amorphous written agreement. *Cf. Helpin*, 969 A.2d at 611–12 (finding terms of agreement sufficiently specific to be enforceable based on language of the agreement and subsequent conduct of parties). The fact that the parties allegedly agreed to negotiate a salary for equity swap in the future, without more, is insufficient to make that agreement specifically enforceable. Though a court may insert incidental terms in an agreement, it will not fashion an agreement for the parties when they have not agreed upon essential terms. *See SDK Invs. Inc. v. Ott*, Civ. A. No. 94-1111, 1996 WL 69402, at *7 (E.D. Pa. Feb. 15, 1996). Here, the parties agreed on nothing other than the subject of their future negotiations.

Quinn argues that the promise to negotiate contained in the 2008 compensation plan is sufficiently specific because it details "the means and time of negotiation." (Pl.'s Resp. to Defs.'

6

Mot. to Dismiss at 14.) In this respect, Quinn appears to have moved away from her request for judgment in "an amount representing the TOA ownership interest she is due" and seems instead to be "seeking to enforce defendants' agreement to renegotiate her compensation plan." (Pl.'s Resp. to Defs.' Mot. to Dismiss at 13.) In this regard, Quinn misunderstands the import of the definiteness requirement of contract law. It is true that in Pennsylvania, an agreement to negotiate in good faith, "if otherwise meeting the requisites of a contract, is an enforceable contract." *Channel Home*, 795 F.2d at 299. However, the aspects that need to be sufficiently specific are more than just the means and time of negotiation. In finding that the terms of a letter of intent were "sufficiently definite to be specifically enforced," the Third Circuit in *Channel Home* noted that the letter contained "most significant lease terms," including rent and duration of the agreement, and a statement that the landowner would "withdraw the Store from the rental market, and only negotiate the above described leasing transaction to completion." *Id.* at 293 n.2, 300. A statement that parties will meet at a certain time and negotiate a particular topic does not create an enforceable agreement to negotiate in good faith. Therefore, the Court will grant Defendants' motion to dismiss Count I of Quinn's Complaint.

  **B.**   **Breach of Duty of Good Faith and Fair Dealing & Request for Accounting**

Count II of Quinn's Complaint alleges a breach of the duty of good faith and fair dealing. The only basis upon which that duty could be arguably applicable is if a contract existed. *City of Rome v. Glanton*, 958 F. Supp. 1026, 1038 (E.D. Pa. 1997) ("Absent a contract, however, there is no breach of the duty of good faith and [fair] dealing.") Since the agreement Quinn seeks to enforce is not a contract, her claim for breach of the duty of good faith and fair dealing must be denied.

Similarly, Quinn's request for an accounting of Defendants' financial records is premised on

the existence of a contract, which, as noted above, does not exist. Therefore, this claim will be dismissed.

## C. Unjust Enrichment

Count IV of Quinn's Complaint charges Defendants with unjust enrichment. Under Pennsylvania law, the elements of unjust enrichment are: "(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 180 (3d Cir. 2008). Quinn pleads this claim in the alternative to her contract claim. (Pl.'s Resp. to Defs.' Mot. to Dismiss at 16.)

Defendants argue that Quinn's unjust enrichment claim must fail because she does not allege the existence of a benefit that Defendants unjustly retained. (Mem. in Supp. of Def.'s Mot. to Dismiss at 12.) Quinn counters that Defendants "received a proportionate increase in their ownership of TOA as a result of their unlawful denial to Ms. Quinn of the equity stake in the company they promised her in February 2008." (Pl.'s Resp. to Defs.' Mot. to Dismiss at 17.) The Court finds that Quinn has made sufficient allegations to survive a motion to dismiss on her unjust enrichment claim.

## IV. CONCLUSION

For the reasons stated above, the Court will dismiss Counts I–III of Quinn's Complaint, but will allow her unjust enrichment claim to proceed. An appropriate Order will be docketed separately.